UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ALEXUS GAIRY                                          :        **Civ No.:**
                                                      :
                        Plaintiff,                    :
                                                      :
           -against-                                  :        **COMPLAINT**
                                                      :
THE CITY OF NEW YORK,                                 :
THE NEW YORK CITY DEPARTMENT OF                       :
CORRECTION, MORRIS LEWIS                              :        **(JURY TRIAL DEMANDED)**
(Individually And In His Respective Capacity As       :
An Acting Officer of the New York City Department     :
of Correction), and SEETA DOECHAN                     :
(Individually And In Her Respective Capacity As       :
Acting Officer of the New York City Department of     :
Correction)                                           :
                                                      :
                        Defendants.                   :
------------------------------------------------------------------X

      Plaintiff, Alexus Gairy ("hereinafter "Plaintiff" or "Gairy"), by and through her attorneys, L & D LAW P.C (*Liggieri & Dunisha*), complaining of Defendants, jointly and severally, herein respectfully shows to this Court and alleges the following:

## **NATURE OF THIS CASE**

1. This is an action to remedy discrimination based on gender discrimination and retaliation is brought by Plaintiff Alexus Gairy pursuant to the provisions of the Civil Rights Act of 1866, and pursuant to Article I, §11 of the New York State Constitution for the violation of her due process and other constitutional rights to be free from gender discrimination, and retaliation.

2. Plaintiff also complains pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e et. Seq. ("Title VII"), and to remedy violations of the laws of the State of New York, based upon diversity and the supplemental jurisdiction of this Court

pursuant to <u>Gibb</u>, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking relief and damages to redress the injuries Plaintiff has suffered as a result of being gender discriminated and retaliated against by Defendants.

3.  Defendants engaged in a pattern and practice of committing gender discrimination and retaliation and had prior knowledge of such acts before Plaintiff Alexus Gairy was gender discriminated and retaliated against.

## **JURISDICTION AND VENUE**

4.  Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and the Civil Rights Act of 1866 and 1871, which give this Court jurisdiction for each statute; the damages; exclusive of interest and costs in this instance exceed that of all lower courts, and this Court's pendent jurisdiction is also invoked.

5.  The unlawful employment practices alleged herein occurred wholly or in part, in the jurisdiction of the Eastern District of New York.

## **JURY DEMAND**

6.  Plaintiff hereby demands a trial by jury on all issues properly triable thereby.

## **PARTIES**

7.  Plaintiff Alexus GAIRY is an African American woman who resides in the State of New York, Kings County.

8.  Defendant The City of New York Department of Correction is a municipal corporation, incorporated in the State of New York. The causes of action in this case arise within the County of Queens, County of New York, and City of New York.

9. The City of New York Department of Correction assumes the risk of its Captains and the employment of said Captains who act under the color of law as uniformed officers of the City of New York and its subsidiary agency, the Department of Correction.

10. The Department of Correction City of New York has their headquarters at 75-20 Astoria Blvd, East Elmhurst, NY 11370.

11. At all relevant times, the City of New York acted through its agency, The New York City Department of Correction, to commit the acts alleged in this Complaint and were responsible for such acts.

12. At all times material, Defendant The New York City Department of Correction (hereinafter referred to as "DOC" is a municipal corporation, operating under the purview of the City of New York and duly existing by the virtue and laws of the State and City of New York. The DOC manages eleven inmate facilities in the City of New York throughout all five boroughs.

13. At all times material, Plaintiff Alexus Gairy (hereinafter referred to as "Plaintiff" or "Gairy") is employed by the City of New York and its agency The New York City Department of Correction.

14. At all times material, Plaintiff was hired in or around January 2016, as a full-time employee in the position of Corrections Officer.

15. At all times material, Defendants Supervisor Captain Morris Lewis (hereinafter referred to as "Lewis" was and is a supervising employee with the DOC.

16. At all times material Defendant Lewis had direct supervisory authority over Plaintiff Gairy with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

17. At all times material, Captain Lewis subjected the Plaintiff to retaliation by consistently discriminating against the Plaintiff with denigrating comments and unwanted physical contact in front of other officers.

18. In addition, Captain Lewis subjected Plaintiff to disparate treatment because she had placed an EEO complaint against Defendants' Captain Lewis.

19. Captain Lewis also discriminated against the Plaintiff because she associated herself with Correctional Officer Laurice Williams, who had placed an EEO against Captain Lewis as well.

20. At all times material, Defendants employee Supervisor Captain Seeta Deochan (hereinafter referred to as "Deochan" was and is a supervising employee with the DOC.

21. At all times material Defendant Deochan had direct supervisory authority over Plaintiff Gairy with regard to her employment which included but was not limited to the ability to hire and fire along with other tangible employment actions.

22. At all times material, Defendant Deochan discriminated against the Plaintiff on the basis of her gender and retaliated against the Plaintiff for filing sexual harassment complaints against Defendant Lewis.

23. In addition, Defendant Deochan subjected Plaintiff to disparate treatment and hostile work environment because of her complaints of gender discrimination against Defendant Lewis.

## **PROCEDURAL HISTORY**

24. On or about March 17, 2021, Plaintiff Gairy filed an EEO (DOC's internal Equal Employment Office) Complaint of sexual harassment and retaliation, naming Captain Morris Lewis as the Respondent.

25. An investigation into these allegations revealed sufficient evidence to support Plaintiff's allegations.

26. On or about July 14, 2021, the Equal Employment Opportunity determined Plaintiff's allegations to be substantiated.

27. On or about June 18, 2022, Plaintiff filed a charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

28. On or about November 7, 2022, the EEOC issued a Right to Sue letter allowing the Plaintiff to file a lawsuit against the Defendant(s) in Federal Court.

29. This lawsuit is being filed within receipt of the 90-day EEOC Right to Sue letter.

## **FACTS**

30. In or around June of 2017, Defendant DOC hired Plaintiff Gairy as a correctional officer.

31. At the time, Plaintiff was 22 years of age. Plaintiff was full of hope and excitement for the prospect of a new career as well as for the opportunities that lay ahead.

32. On or about July 2019, Plaintiff started working on the Special Search Team.

33. Soon thereafter, Plaintiff started having issues with her supervisor, Captain Lewis.

34. Plaintiff has been a Correctional officer for almost 5 years. Her current command is RNDC. Out of these 5 years she has been on the Special Search Team for 3 years.

35. In or around October 2020, while on duty, Plaintiff was assaulted by an inmate. Plaintiff, among other lesions, sustained damage to her arm.

36. Although Plaintiff had just been attacked and her arm was in pain, upon return into the GMDC building's intake area, Captain Lewis punched the Plaintiff in the arm claiming "You are not hurt". The Plaintiff, in pain and holding her arm, replied **"I am!"**

37. Defendants Captain Lewis discriminated against the Plaintiff on the basis of her gender.

38. Defendants Captain Lewis had a history of harassing and retaliating against the female officers in the DOC.

39. Specifically, in or around February 2021, feeling helpless, one of Defendants' DOC officers named Laurice Williams had complained that Defendant Captain Lewis had subjected her to sexual harassment and retaliation, among other things.

40. Upon information and belief, in or around this time, Defendant Captain Deochan was also informed of Defendant Lewis harassing another officer by the name of Miles (badge number #18405).

41. On or about February 16, 2021, Defendant Deochan called a meeting encouraging participating officers to anonymously submit complaints. The meeting supposedly was a safe space for these officers to voice their complaints, as they could not do so publicly out of fear of retaliation from Defendants' Captain Lewis.

42. Upon information and belief, prior to this meeting, Captain Deochan was already aware that Captain Lewis had inappropriately touched the Plaintiff.

43. Upon information and belief, Defendants' Captain Lewis was aware that Laurice Williams is Plaintiff Gairy's very close friend.

44. Plaintiff Gairy already noticed that the more she associated herself with CO Laurice Williams – who had an ongoing EEO complaint against Defendants' Captain Lewis – the more unprofessional and improper Captain Lewis was to the Plaintiff.

45. Defendants' Captain Lewis was singling out the Plaintiff during roll calls.  On multiple occasions, through devious questions, Captain Lewis attempted to embarrass the Plaintiff in front of her peers.

46. On or about March 13, 2021, one month after Deochan's meeting, the Plaintiff was assigned to the Special Search Operation led by Defendants' Captain Lewis on the 7 AM to 3:31 PM tour.

47. At approximately 1:40 PM Defendants' Captain Lewis called Correctional Officer (CO) Joyce Davis and the Plaintiff into his office.

48. Upon entering the room, Captain Lewis immediately requested the Plaintiff report to him on what had happened between CO Carolyn Graiger and the Plaintiff on February 18, 2021.

49. The Plaintiff proceeded to explain to Captain Lewis that there was an ongoing investigation about the incident, wanting to leave the matter at that, since it was well known that Defendants' Captain Lewis was friends with CO Carolyn Graiger.

50. Upon information and belief, CO Carolyn Graiger was previously also arrested for allegedly *jumping* a 39-year-old victim during an unprovoked attack in Chelsea and also called for her friends to join, who began to punch and kick the victim on the ground. This matter made the news.

51. Plaintiff was fearful she would incur further retaliation if she expressed her concerns about CO Carolyn Graiger to Defendants' Captain Lewis.

52. In order to avoid any inadequate responses, and since the investigation was still ongoing, the Plaintiff suggested that Defendants' Captain Lewis contact his colleagues, Captain Gerardo Rivera or Captain Jermaine Phillips so they can fill him in on the dispute.

53. Captain Lewis stated that he would not reach out to them.

54. Upon information and belief, Defendant Lewis wanted to retaliate against the Plaintiff based on her gender and association with CO Laurice Williams, thus he attempted to take over the investigation although it wasn't assigned to him.

55. In addition to the retaliation and gender discriminatory behavior towards the Plaintiff, Defendant Lewis ridiculed the Plaintiff stating: **"What if y'all began scraping in here?"** insinuating a simple quarrel escalating to a physical altercation between the Plaintiff and CO

Carolyn Graiger.

56. The Plaintiff reassured Captain Lewis that nothing of the sort was going to happen as far as she was concerned, reassuring him Plaintiff would continue to handle herself in a professional manner.

57. Plaintiff further stated: **"Captain Lewis, I don't want any problems or hostility. I'm 26 years old with 4 years on the job. I have too much to lose and I will never let anyone jeopardize my position on the Special Search Team or my career as a Correctional Officer".**

58. Plaintiff felt very uncomfortable with the allegations Defendants' Captain Lewis was making. Plaintiff felt as if she was being coerced to say something negative about CO Carolyn Graiger so Captain Lewis would have a reason to kick her off the Special Search Team.

59. At this point, irrespective of Plaintiff's heartfelt reassurances, Defendants' Captain Lewis instructed the Plaintiff to not show up for the Special Search Operation to be conducted on March 14, 2021, the very next day. Captain Lewis ordered the Plaintiff to report to her RNDC Command instead.

60. Plaintiff informed Defendants' Captain Lewis that she was on the schedule for the next day, and that she had been working with CO Carolyn Graiger throughout the week, including this very day, without any incidents.

61. Furthermore, Plaintiff informed Captain Lewis that Captain Jermaine Phillips was currently investigating the incident, to which Defendants' Captain Lewis responded: "Captain Phillips isn't here anymore" as he had been sent back to GRVC due to lack of staff.

62. Although Captain Philips had been sent back, that did not mean that he was removed from leading the investigation, as Defendants' Captain Lewis was insinuating.

63. Defendants' Captain Lewis retaliated against the Plaintiff prohibiting her to take part in the Special Search Operation on March 14, 2021.

64. CO Carolyn Graiger had previously requested the Plaintiff be denied work during the days that she worked, **but both Captain Gerardo Riviera and Captain Jermaine Phillips had informed CO Carolyn Graiger that they cannot fulfill that request, as it would be discriminatory to the Plaintiff**.

65. Willfully making an eye blind to the discriminatory nature of such a request, Defendants' Captain Lewis retaliated against the Plaintiff by prohibiting the Plaintiff to attend the Special Search Team on the days that CO Carolyn Graiger was on duty.

66. Plaintiff had also been told by Deputy Warden Julio Colon that she was allowed to go to the Special Search Team when CO Carolyn Graiger was there. Additionally, an investigation was underway, and no fault or blame had been placed on the Plaintiff.

67. To the best of Plaintiff's knowledge and belief, CO Carolyn Graiger went to her friend Captain Lewis, who took it upon himself to take the Plaintiff off the schedule.

68. While CO Carolyn Graiger wasn't being sent back to her Command, by Defendants' Captain Lewis, the Plaintiff was, displaying clear retaliation against the Plaintiff from Captain Lewis.

69. It is common that when there are disputes between officers, either the parties work it out, or they are both sent back to their respective commands.

70. Since CO Carolyn Graiger is senior staff and a friend of Defendants' Captain Lewis, she was not sent back.

71. Plaintiff had prior altercations with Defendants' Captain Lewis often involving unwanted physical contact initiated by Defendants' Captain Lewis. Plaintiff had asked him on multiple occasions to stop touching/hitting her.

72. Defendants' Captain Lewis had the tendency to punch the Plaintiff in the arm with force and without warning.

73. Although Plaintiff had requested multiple times that he stop, Captain Lewis kept punching the Plaintiff.

74. Defendants' Captain Lewis punched, forcefully pulled, and grabbed the Plaintiff by the arm on multiple occasions ever since Plaintiff was assigned to the Special Search Team.

75. In addition to the retaliation and gender discrimination, Defendants' Captain Lewis violated New York's Gender-Motivated Violence Protection Act by repeatedly hitting the Plaintiff and engaging in unwanted physical contact.

76. Plaintiff was left traumatized by these assaults, to the extent that she would get anxious every time she would hear the distinct sound of Captain Lewis's keychain when he was approaching her.

77. Additionally, Captain Lewis would enter unannounced into the Special Search Team ladies' room, where female officers changed and consumed their food. **He was the only male officer to do so.**

78. On or about March 17, 2021, Plaintiff Gairy filed an internal complaint, naming Captain Morris as the Respondent. This complaint alleged a violation of the City and Department's EEO Policy based upon sexual harassment and retaliation.

79. On or about April 2021, after having served as a witness for CO Laurice Williams' EEO complaint and following years of physical abuse by Defendants' Captain Lewis, Plaintiff decided to address these issues with the EEO board.

80. The EEO informed the Plaintiff that her complaints were better suited to be filed with the Workplace Violence board.

81. Defendants' Captain Lewis frequently stated that he had friends in very high places.

82. Captain Deochan sat on the institutions' Workplace Violence Board, as such she carried the duty of reporting harassment that all these women incurred in the workplace by Captain Lewis. However, upon information and belief, Captain Deochan purposely failed to report these cases due to her personal relationship with Captain Lewis.

83. Upon information and belief, Captain Lewis and Captain Deochan are two of the three Captains who work under the supervision of Chief Kenneth Stukes.

84. In fact, in or around October 2020 Defendants' Captain Lewis punched, pushed and threw hand sanitizer bottles at Plaintiff in front of multiple officers, namely: Captain Jermaine Phillips, Captain Gerardo Rivera and CO Carmen Sanchez.

85. On or about April 1, 2021, Plaintiff reported Captain Lewis to the Work Violence Board, specifically to Defendants' Captain Deochan.

86. Once Plaintiff placed her complaint against Defendants' Captain Lewis with Defendants' Captain Deochan, the latter immediately reported to Defendants' Captain Lewis everything the Plaintiff had said about him during the confidential meeting.

87. In fact, the very next day, Captain Lewis made a speech during roll call, claiming there were people going after him and how he: **"…doesn't give a fuck, because he isn't going anywhere."**

88. On or about April 27, 2021, within the same month that multiple female officers had placed complaints to Defendants' Captain Deochan about Defendants' Captain Lewis inappropriate behaviour, Captain Deochan retaliated against three of these women ,namely: CO Laurice Williams, CO Stacey Missinger and the Plaintiff Alexus Gairy by diminishing their number of shifts with the Special Search Team to only 2 per week.

89. All three of these officers were women abused by Defendants' Captain Lewis on different occasions. All three of these women had spoken up against Defendants' Captain Lewis during the confidential workplace violence meeting they had with Defendants' Captain Deochan. All three of these women were being retaliated against by Captain Deochan for speaking up against Captain Lewis.

90. Plaintiff went from five days a week of service in the Special Search Team to only two days a week. Defendant Captain Deochans' order effectively canceled Plaintiff's overtime since Plaintiffs' shifts overlapped with Defendant Captain Lewis' shifts, and even during the days that the Plaintiff was allowed to participate in the Special Search Team, Captain Lewis would cut her hours short, sending her home early.

91. Plaintiff complained about the unfair retaliation she was going through to the Special Search Team Secretary CO Carmen Sanchez, but to no avail.  CO Carmen Sanchez informed the Plaintiff that there was nothing she could do, as the schedule was drafted as per Defendant Captain Deochan's orders.

92. On or about July 14, 2021, the EEO sent a letter to the Plaintiff stating in part: "An investigation into these allegations revealed sufficient evidence to support your allegations (sexual harassment and retaliation). Accordingly, the allegations are **substantiated.**

93. On or about August 25, 2021, Plaintiff had a CD hearing at the RNDC but was assigned to the Special Search Team that day. Captain Dave Payne allowed the Plaintiff to go to RNDC to handle the CD.

94. Plaintiff informed Captain Payne that she would attend the CD and once done she would be back. Captain Dave Payne allowed the Plaintiff to go to RNDC to handle the CD.

95. Once there though, there were many CD's taking place which hindered the Plaintiff from

making it back in time for the ongoing Special Search Operation of the day.

96. Once done, the Plaintiff immediately called Captain Payne, asking on whether she should return. Captain Payne responded that they were done for the day and that she could go home.

97. Plaintiff though was still in Special Search team uniform and needed to drop off her equipment, change into her civilian clothes and pick up some personal items at the Special Search Team changing room.

98. When close to the Special Search Team base, Plaintiff noticed from her car that Defendants' Captain Lewis was observing her disapprovingly.

99. Even though no words were exchanged, Plaintiff felt extremely uncomfortable from Captain Lewis's stare.

100. When Plaintiff went home, Captain Payne called her, asking Plaintiff why Plaintiff had been driving around the island instead of going home, as she had been told to.

101. In fact, Captain Payne had been led to believe that rather than participating in the Special Search Team operation, Plaintiff had been aimlessly driving around the island.

102. To Plaintiffs' best knowledge an belief, Defendants' Captain Lewis had retaliated against the Plaintiff by feeding Captain Payne incorrect information regarding the Plaintiffs' actions that day.

103. Plaintiff immediately called CO Laurice Williams, and while crying told CO Williams how Plaintiff had returned to drop her equipment at Special Search base, and how Defendant's Captain Lewis, without cause or justification, had led Captain Payne to believe that Plaintiff had purposefully skipped the Special Search Operation that day.

104. In or around late August, Defendant Lewis was placed on leave.

105.    On or about September 5, 2021, a Go Fund Me page was set up for Defendant Lewis by his peers.

106.    The Plaintiff was shocked to find out that 46 Officers had already contributed to the fund, showcasing that Defendant Lewis still had strong support among his peers, supervisors and subordinates.

107.    Upon information and belief, it is illegal for a Department of Corrections Captain to accept monies via GoFundMe. In fact, there are news articles regarding other DOC Captain's receiving fines specifically for doing the same. Upon information and belief, Defendant Lewis was not fined for doing the same.

108.    Upon information and belief, on or about June 15, 2022, Defendant DOC decided to terminate all the Chief's and hire outside personnel.

109.    Upon information and belief, prior to Chief Kenneth Stukes leaving his position as Chief, he reinstated Defendant Lewis to his full position as Captain.

110.    On or about June 23, 2022, Defendant Lewis was reinstated back to full duty.

111.    As a result of Defendants' conduct, Plaintiff was left in a state of despair and hopelessness.

112.    As a result of Defendants' actions, Plaintiff Gairy felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

113.    As a result of Defendants' discriminatory and intolerable treatment, Plaintiff Gairy suffered and continues to suffer severe emotional distress.

114.    As a result of the acts and conduct complained of herein, Plaintiff Gairy has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails.

115.    Plaintiff Gairy has also suffered future pecuniary losses, emotional pain, suffering,

inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

116.    Plaintiff Gairy further suffers from panic attacks and cannot sleep at night on account of

Defendants' discriminatory and retaliatory conduct.

117.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full

knowledge of the law, Plaintiff Gairy demands Punitive Damages against Defendant.

118.    The above are just some of the examples of unlawful and discriminatory conduct to which

Defendant subjected Plaintiff Gairy.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(Not Against Individual Defendants)**

119.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

120.    Title VII states in relevant part as follows:

> (a)Employer practices: It shall be an unlawful employment practice for an
> employer –
>     (1) To fail to refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with respect to his
> compensation, terms conditions, or privileges of employment, because
> of such individual's race, color, religion, sex, or national origin;

121.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

unlawful employment practices of the above-named Defendants. Plaintiff complains of

Defendants' violation of Title VII's prohibition against discrimination in employment based,

in whole or in part, upon an employee's race and sex.

122.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et

seq., by discriminating against Plaintiff as set forth herein.

### AS A SECOND CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendant)

123.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

124.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that

it shall be unlawful employment practice for an employer: "(1) to discriminate against any of

his employees… because she has opposed any practice made an unlawful employment practice

by this subchapter, or because she has made a charge, testified, assisted or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."

125.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq.

by discriminating against Plaintiff with respect to the terms, conditions, or privileges of

employment because of her opposition to the unlawful employment practices of Defendants.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (Not Against Individual Defendants)

126.   Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a)

For an employer or licensing agency, because of an individual's age, race, creed, color, national

origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics,

marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to

discharge from employment such individual or to discriminate against such individual in

compensation or in terms, conditions or privileges of employment."

127.   Defendants engaged in an unlawful discriminatory practice by discriminating against

Plaintiff as set forth herein.

128.   Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs

of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(As Against Individual Defendants)**

129.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

130.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory

practice:

> "For any person engaged in any activity to which this section applies to
> retaliate or discriminate against any person because [s]he has opposed any
> practices forbidden under this article."

131.    Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and

otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful

employment practices of Plaintiff's employer.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(As Against individual Defendants)**

132.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

133.    New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory

practice:

> "For any person to aid, abet, incite, compel, or coerce the doing of any acts
>
> forbidden under this article, or attempt to do so."

134.    Defendants engaged in an unlawful discriminatory practice in violation of New York State

Executive Law §296(6) by aiding, abetting, inciting, compelling, and coercing the

discriminatory conduct.

### AS A SIXTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

135.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

136.    The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to reduce to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

137.    Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff as set forth herein.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Note Against Individual Defendants)

138.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

139.    The New York City Administrative Code Title 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer…to discharge…or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter…"

140.    Each of Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Title 8, §8-107(1)(e) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

141.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

142.   The New York City Administrative Code Title 8, §8-107(19) Interference with protected rights provides that it shall be unlawful discriminatory practice: "For any person to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

143.   Defendants violated the section cited herein as set forth.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (As Against Individual Defendants)

144.   Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

145.   The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

146.   Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and

coercing the above discriminatory, unlawful, and retaliatory conduct.

**AS A TENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As Against Individual Defendants)**

147.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

148.    The New York City Administrative Code §8-107(7) provides that "It shall be an unlawful

discriminatory practice for any person engaged in any activity to which this chapter applies to

retaliate or discriminate in any manner against any person because such person has (i) opposed

any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any

proceeding under this chapter, (iii) commenced a civil action alleging the commission of an

act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the

commission or the corporation counsel in an investigation commenced pursuant to this title,

(v) requested a reasonable accommodation under this chapter, or([v]vi) provided any formation

to the commission pursuant to the terms of a conciliation agreement made pursuant to section

8-115 of this chapter."

149.    Defendants engaged in an unlawful discriminatory practice of retaliating against Plaintiff

in accordance with the above cited statue under §8-107(7).

**AS AN ELEVENTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Not Against Individual Defendants)**

150.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

151.    The New York City Administrative Code §8-107(13) Employer liability for discriminatory

conduct by employee, agent or independent contractor provides that:

a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other subdivisions 1 and 2 of this section.

b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision 1 or 2 of this section only where:

(1) The employee or agent exercised managerial or supervisory responsibility; or

(2) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

(3) The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

152.    Defendants violated the section cited herein as set forth.

## AS A TWELVTH CAUSE OF ACTION
## FOR VIOLATION OF RIGHTS SECURED BY 42 U.S.C. §1983
### (Against All City/DOC Defendants)

153.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

154.    42 U.S.C. §1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…

155.    In committing the acts of discrimination and retaliation complained herein, the Defendants acted jointly and under color of state law to deprive Plaintiff of her clearly established constitutionally protected rights under the Fourteenth Amendment of the United States Constitution.

156.    Plaintiff in this action is a citizen of the United States and all of the individual Defendants to this claim are persons for purposes of 42 U.S.C. §1983.

157.    An employee may bring a retaliation claim under §1983 against a supervisor who, acting under color of law, retaliates against her for opposing discrimination in the terms of her employment.

158.    Defendants violated the above statute through multiple acts of unlawful gender and race discrimination, sexual harassment, and retaliation.

### AS THIRTEENTH CAUSE OF ACTION
### (Individual Supervisory Liability – 42 U.S.C. §1983 – As Against City/DOC Individuals)

159.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

160.    Individual Defendant LEWIS was at all relevant times, a captain within the Department of Corrections with oversight responsibility for the training, instruction, and supervision of Plaintiff.

161.    Defendant LEWIS knew or should have known that his individual actions against Plaintiff violated the United States Constitution.

162.    Defendant LEWIS, as the supervisory Captain of the DOC, acted in unlawful discrimination and retaliation against Plaintiff which was based on the Plaintiff's sex and gender.

163.    Defendant LEWIS directly participated in the unlawful constitutional violation against

Plaintiff by gender discriminating against Plaintiff and then later by personally retaliating or inciting others to retaliate against Plaintiff after she complained of unlawful violations by Defendant LEWIS.

164.   Defendant LEWIS' actions created a policy or custom under which unconstitutional practices occurred.

165.   Defendant LEWIS acted with intent and/or deliberate indifference towards Plaintiff after she complained of unconstitutional violations and took steps to further harm Plaintiffs' constitutional rights.

166.   Defendant DEOCHAN also knew or should have known she was unlawfully discriminating against Plaintiff and failed to respond or address such actions in any way.

167.   On information and belief, Defendant LEWIS was personally involved in either ordering, inciting or failing to take preventative and remedial measures to guard against the unconstitutional discrimination and retaliation against Plaintiff. Defendant DEOCHAN also knew, or in the exercise of due diligence, should have known, that the unconstitutional actions taken against Plaintiff were discriminatory and retaliatory in nature.

168.   The failure of the individual supervisory Defendants to supervise and/or discipline any of the aforementioned defendants with respect to their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate indifference, or intentional misconduct, which directly and proximately caused the injuries and damages to Plaintiff set forth herein.

### AS FOURTEENTH CAUSE OF ACTION
### (EQUAL PROTECTION – 42 U.S.C §1983)

169.   Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

170.   Individual Defendants LEWIS and DEOCHAN, were at all relevant times supervising employees in the DOC, with oversight responsibility for the training, instruction, and

supervision of the Plaintiff.

171.    Defendants LEWIS and DEOCHAN, failed to intervene, to prevent or stop the clearly

discriminatory and retaliatory actions taken against Plaintiff.

172.    Defendants LEWIS and DEOCHAN, actively participated in the clearly discriminatory and

retaliatory actions against Plaintiff.

173.    Defendants LEWIS and DEOCHAN, actively condoned other officers' participation in the

clear discriminatory and retaliatory actions against Plaintiff.

174.    Defendants LEWIS and DEOCHAN also knew or should have known that their conduct

was unlawful and discriminatory against Plaintiff. Such conduct failed to respond or address

the discriminatory and retaliatory actions against Plaintiff in any way.

175.    Upon information and belief, Defendants LEWIS and DEOCHAN, were personally

involved in either ordering, inciting or failing to take preventative and remedial measures to

guard against the unconstitutional discrimination and retaliation against Plaintiff.

176.    Defendants LEWIS and DEOCHAN knew, or in the exercise of due diligence, should have

known, that the unconstitutional actions taken against Plaintiff were likely to occur.

177.    The failure of the individual supervisory Defendants to supervise and/or discipline any of

the aforementioned captains, officers, DOC prosecutors or other Defendants with respect to

their unlawful discrimination and retaliatory actions amounted to gross negligence, deliberate

indifference, or intentional misconduct, which directly and proximately caused the injuries and

damages to Plaintiff set forth herein.

## AS FIFTEENTH CAUSE OF ACTION
## (EQUAL PROTECTION – 42 U.S.C. §1983)

178.    Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

179.    The aforementioned actions Plaintiff was forced to endure at the hands of Defendant

LEWIS amount to gender discrimination.

180. The ensuing acts of gender discrimination committed by Defendants were based on Plaintiff's gender.

### AS A SIXTEENTH CAUSE OF ACTION
#### (*Monell* Claim – 42 U.S.C. – As Against CITY/DOC Defendants)

181. Defendants violated the above statute through multiple acts of unlawful gender discrimination and retaliation.

182. Plaintiff incorporates all preceding paragraphs of this Complaint as if fully restated herein.

183. All of the acts and omissions by Defendants described above, with regard to the unreasonable, unlawful, and retaliatory discrimination against Plaintiff were carried out pursuant to overlapping *de facto* policies and practices of the City of New York and its agency, which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of Defendant The City of New York Department of Corrections.

184. Defendant The City of New York and its agency, The Department of Corrections, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual wrongful acts of Defendant LEWIS and Defendant DEOCHAN; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

185. The actions of Defendant LEWIS and Defendant DEOCHAN resulted pursuant to the *de facto* policies and/or well-settled and widespread customs and practices of the DOC. The relevant policies, customs and practices with regard to the gender discrimination and retaliation perpetrated against Plaintiff are that DOC captains are permitted to discriminate against and unlawfully retaliate against DOC officers who make protected complaints based on gender discrimination.

186.    The existence of the foregoing unlawful *de facto* unwritten policies and/or well-settled and widespread customs and practices is known to be encouraged, and/or condoned by supervisory and policy-making officers and captains of the DOC.

187.    Notwithstanding knowledge of such an unlawful *de facto* unwritten policy, practice, and/or custom, these supervisory and policy-making officers and captains of DOC have not taken steps to terminate this policy-making and/or custom, and do not properly train captains with regard to acts of unlawful discrimination and/or unlawful retaliation, and instead sanction and ratify this policy, practice, and/or custom through their active encouragement of, deliberate indifference to, and/or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of Plaintiff and other persons similarly situated to Plaintiff.

188.    The aforementioned DOC policy, practice, and/or custom of failing to supervise, train, instruct, and discipline captains within the DOC is specifically exemplified and evidenced by the misconduct detailed herein.

189.    Plaintiff's injuries were a direct and proximate result of Defendant DOC's wrongful *de facto* policy and/or well-settled and widespread custom and practice and of the known and frequent failure of Defendant DOC to properly supervise and train captains with regard to unconstitutional discrimination and retaliatory conduct.

190.    Defendant DOC knew or should have known that the acts alleged herein would deprive Plaintiff of her rights in violation of the Fourteenth Amendment of the United States Constitution.

191.    Defendant DOC knew or should have known that the unlawful actions against Plaintiff would occur considering similar complaints were filed against Defendants in the past and

nothing was done by Defendant DOC to remedy such unlawful behavior.

192.   Defendant DOC is directly liable and responsible for the acts of the individual Defendants LEWIS and DEOCHAN as it repeatedly and knowingly failed to properly supervise, train, instruct and require their compliance with the constitutions and laws of the State of New York and the United States.

**AS A SEVENTEENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE §8-903-6**
**ALSO KNOWN AS THE GENDER-MOTIVATED VIOLENCE ACT ("GMVA")**
**(As Against individual Defendant LEWIS)**

193.   Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs of the Complaint as set forth at length herein.

194.   In relevant part GMVA, N.Y.C. Code §8-904 provides: "[A]ny person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual."

195.   Section 8-903 defined "crime of violence" as "an act or series of acts that would constitute a misdemeanor of felony against the person as defined in state or federal law... if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges."

196.   Section 8-903 also provides that such an act is "motivated by gender" if it is "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."

197.   In this case, Defendant LEWIS (i) committed an act that constituted a felony when (ii) he presented a serious risk of physical injury when he sexually assaulted Plaintiff (iii) on account of her gender, (iv) when sexual advances were rejected, and Defendant LEWIS developed or already had an animus toward Plaintiff's gender.

198.   Defendant LEWIS is liable to the Plaintiff under the GMVA in which Plaintiff Gairy claims

damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands the following relief jointly and severally against all
Defendants:

    (a)  a declaration that Defendants violated Plaintiff's federal and state civil
         rights;

    (b)  compensatory damages for the injuries suffered by Plaintiff by reason of
         Defendants' unlawful and unjustified conduct, in an amount just and
         reasonable and in conformity with the evidence at trial in an amount to be
         determined at trial;

    (c)  punitive damages against the individual Defendants assessed to deter such
         intentional and reckless deviation from well-settled constitutional
         standards, to the extent allowable by law;

    (d)  damages for emotional distress, lost wages, back pay, front pay, statutory
         damages, medical expenses, interest;

    (e)  reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988 and all
         other applicable laws; and

    (f)  such other and further relief as appears just and proper.

Dated: New York, New York
February 2, 2022

                           **L & D LAW P.C.**
                           _____/s/_____
                           Paul Liggieri, Esq.
                           11 Broadway, Suite 615
                           New York, NY 10004
                           (212) 374-9786
                           *Attorneys for Plaintiff*